IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| AARON WILSON GARNER | * |
| | * |
| VS. | *   C. A. NO. G-07-221 |
| | * |
| BP PRODUCTS NORTH AMERICA, INC. | * |

**DEFENDANT, BP PRODUCTS NORTH AMERICA INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTION TO DEFENDANT'S WITNESS LIST, AND SUPPORTING MEMORANDUM**

TO THE HONORABLE JUDGE OF SAID COURT:

BP Products North America Inc. ("BP") files this Response in Opposition to Plaintiffs' Objections to its Witness List, as follows:

I. INTRODUCTION

1.   Plaintiffs filed an "Objection to Defendant's Witness List" on November 23, 2009. (Docket No. 211). Plaintiffs do not offer one specific objection to any of BP's Witnesses – not on relevance or other grounds. Rather, Plaintiffs make only one objection – *there are too many*. Plaintiffs have decided that BP should be limited to a lesser number of witnesses. Plaintiffs cite no case law to support this unusual proposition.[1]

2.   Plaintiffs and Intervenors claims they were injured at at the BP Texas City Refinery, on April 19, 2007. On that date, a portion of contractor workers reported smelling a variety of unidentified odors at various locations within the refinery. Many others at the site, including other contractor workers and BP employees, smelled nothing unusual.

---

[1] Plaintiffs cite one case – *Topalian v. Ehrman*, 954 F.2d 1125, 1139 (5th Cir. 1992, *cert. denied*). This case had nothing to do with Witness Lists.

1

3. The Trial Plaintiffs worked in the vicinity of a crude unit named Pipestill 3B ("PS3B"). PS3B had been shut down for about 18 months at the time of the reported odor. Although there was no evidence indicating the presence of any hazardous substances, the contractor workers were told to come down off the unit, and many went to local medical hospitals for evaluation. These medical facilities did not find any objective evidence of exposure to any harmful substances. Aside from two contractor employees who were admitted for pre-existing conditions (high blood pressure and diabetes), all the workers were released that evening, with no objective evidence of injury or illness detected.

6. To date, there is no evidence that Plaintiffs and Intervenors were exposed to any hazardous substances on April 19, 2007, which might have caused them any injuries.

7. Immediately following this incident, BP employees scoured the area with a variety of chemical detection equipment. A special Incident Management Team was formed to supervise this effort. The following day, outside testing firms were brought in to conduct further air monitoring. BP then established a separate Investigation Committee which interviewed over one hundred people who were at the refinery that evening. Following an exhaustive five week investigation, the Investigation Committee was unable to identify the source of the odor(s) which some persons at the refinery claimed to smell on April 19, 2007.

II. Plaintiffs' Liability and Damages Claims – A Moving Target

8. Plaintiffs have no direct evidence to refute the foregoing. Rather, they assert that BP's Investigation Committee used a flawed process. They claim that

various process units, which process thousands of barrels of feedstocks per day, experienced "pressure drops" which <u>might</u> explain a release. Their specific claims as to what they claim happened at BP's refinery have been something of a moving target:

    a.    In May 2007, Plaintiffs' counsel publicly declared that Plaintiffs were explosed to Hydrogen Sulfide (H2S), based on expert witness opinions.[2]

    b.    Most recently, Plaintiffs allege that Plaintiffs were exposed to a *different* chemical – Carbon Disulfide (CS2), based on <u>other</u> expert witness opinions.[3]

9.    Similarly, Plaintiffs' claims as to injuries they claim to have suffered as a result of their claims in this case are something of a moving target. For example, consider the changing claims Trial Plaintiff Wayne Pearson has made during the course of this case:

    a.    In a statement provided shortly after April 19, 2007, Pearson claimed to have suffered no symptoms.

    b.    One week later, Pearson claimed to suffer from headache, nausea, watery eyes and an iron-like taste in his mouth.

    c.    In his answers to BP's Interrogatories, Pearson identified additional, new symptoms: "weakness," back pain and leg pain.

    d.    In deposition testimony, Pearson identified yet more symptoms: heart attack, chest pain, depression, suicidal ideations, loss of consortium, and others.

---

[2] *See* Galveston County Daily News article dated May 5, 2007, attached hereto as Exhibit A. To date, Plaintiffs have not produced the expert reports nor the dead bird referenced in this article.

[3] *See* Defendant's Motion to Exclude Expert Report and Opinions of Donald Schaezler (Docket No. 172), and Exhibit A attached thereto.

### III. BP's Witnesses

10.     BP disputes Plaintiffs' liability and damages claims, in their various shade and phases, in their entirety. To do so, it has identified witnesses who are prepared to testify regarding various chemicals, various process units and locations at BP's Texas City Refinery, various policies and procedures, the events occuring on the date in question, BP's five-week investigation thereof, and related matters. Much of the work being done at the refinery was done by contractors, many of whom are also identified as witnesses.

11.     BP's witness list identifies approximately 140 BP employees, contractor employees, and members of the community who have knowledge of relevant facts. The list also features approximately 10 expert witness. *The rest of the witnesses are Plaintiffs, their relatives, their health care providers and persons with knowledge of their health care and employment issues.* Thus, the <u>vast majority</u> of witnesses identified are simply a product of the number of Plaintiffs included in this suit by their legal counsel.

12.     This is not the first time BP has identified these persons as witnesses. This list is substantially similar to Witness Lists filed in anticipation of other trial settings. (*See, e.g.*, Docket No. 137[4]).

3.      BP would show that its Witness List identifies persons who are reasonable and necessary to the defense of this suit. While BP does not expect to call all of them to trial, it must nevertheless be ready to defend Plaintiffs' liability and damages claims *du jour.* Thus, having filed this lawsuit, without ever

---

[4] Indeed, the referenced Witness List filed in June 2009 was approximately 12 pages *longer* than that filed in anticipation of the current trial setting.

4

specifying the exact nature of their liability and damages claims, Plaintiffs cannot be heard to complain about BP's Witness List based solely on the number of witnesses.

WHEREFORE, Defendant BP Products North America Inc. requests that the Court deny Plaintiff's Objection to its Witness List. Defendant requests all further relief to which it may be justly entitled.

Respectfully submitted,

McLEOD, ALEXANDER, POWEL
& APFFEL, P.C.

_____
James B. Galbraith
Attorney In Charge
   State Bar No. 07574400
   Southern District ID No. 626
   802 Rosenberg/ P.O. Box 629
   Galveston, Texas 77553
   (409) 763-2481
   (409) 762-1155 Fax

ATTORNEYS FOR BP
PRODUCTS NORTH AMERICA INC.

OF COUNSEL:

James B. Galbraith
Lyle Y. Courtney
McLeod, Alexander, Powel
 & Apffel, P.C.
802 Rosenberg
P. O. Box 629
Galveston, TX 77553
(409) 763-2481
(281) 488-7150
Fax. No. - (409) 762-1155

5

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was forwarded to all counsel of record, in accordance with the Federal Rules of Civil Procedure, on the 24 day of November, 2009. Service on E-Filing Users will be automatically accomplished through the Notice of Electronic Filing; non-Filing Users will be served via facsimile transmission.

/s/ James B. Galbraith

James B. Galbraith