IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON WILSON GARNER, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-07-221 |
| | § | |
| BP AMOCO CHEMCIAL COMPANY, et al, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## <u>INSTRUCTIONS TO THE JURY</u>

The following instructions were presented to the jury on the _17th_ day of December, 2009.

Signed this _17th_ day of December, 2009.

KENNETH M. HOYT
UNITED STATES DISTRICT COURT

## I.    GENERAL INSTRUCTIONS

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statements that I have made the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

Do not let bias, prejudice or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

You must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits in evidence, regardless of who may have produced them.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all other evidence you believe that single witness.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness falsely testified concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

A witness may be discredited or "impeached" by contradictory evidence, by a showing that he or she testified falsely concerning a material matter or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony. If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence- such as testimony of an eyewitness. The other is indirect or circumstantial evidence- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from the preponderance of all the evidence, both direct and circumstantial.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

## II.    CONTENTIONS OF PARTIES

In this case, the plaintiffs claim that, in the evening hours on April 19, 2007, while working in BP's Pipestill 3B and CAT 1 units, they were exposed to toxic substances. They claim to have experienced various symptoms that required medical evaluation and/or treatment. In this regard, the plaintiff's claim that BP was negligent in failing to maintain a safe work place due to poor maintenance. The plaintiffs assert that the equipment is old and unreliable and that BP's maintenance program reacts to break downs as opposed to proactively addressing them. Hence, there have been numerous releases and spills of toxic substances at the BP facility before and since April 19, 2007. The plaintiffs also assert that BP did not have sufficient monitoring systems in place to detect a release of toxic substances, to warn workers of a release, and to timely evacuate them from the premises.

The defendant, BP, claims that it did not release a toxic substance on the evening of April 19, 2007. BP disputes that the plaintiffs sustained disabling injuries as a result of its conduct. Moreover, BP claims that there is no evidence that the plaintiffs were exposed to any substance in excess of the applicable "permissible exposure limits" established by OSHA. Finally, BP claims: (a) it was not in control of any instrumentality that caused the odor event, on April 19, 2007; (b) there is no evidence that the alleged unidentified cause of the odor, was under control of BP; (c) the cause of the odor event was due to the negligence of a third party(s) over whom BP had no control; (d) the plaintiff's injuries, if any, were pre-existing and not proximately caused by the odor event of April 19, 2007; and, (e) the odor event was the result of an unavoidable accident.

Because corporations are not natural persons, they act through agents, employees, and servants. Therefore, acts of negligence committed by a BP's agents, employees, and servants,

that arose out of or done in conducting BP's business and done in the course and scope of that relationship binds BP.  Hence, the negligence of BP, if any, may be due to acts of any such agent employee, or servant of BP.

## III.   DEFINITIONS

The rules of evidence provide that is scientific, technical, or other specialized knowledge might assist you in the understanding of the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify and state his or her opinion concerning such matters.  You should consider each expert opinion received in this case and give it such weight as you may think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience or if you should conclude that the reasons given in support of the opinion are not sound or that the opinion is outweighed by other evidence, then you may disregard that opinion entirely.

"Proximate cause" means that cause which, in a natural and continuous sequence, produce an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

### Negligence

Negligence is the failure to use ordinary care, that is, failing to do that which a person or ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. "Ordinary care" means that degree of care that would be used by a person or ordinary prudence under the same or similar circumstances.

Gross Negligence

The plaintiffs also claim that defendant was grossly negligent. To prevail on their claims, the plaintiffs must prove that BP was grossly negligent by "clear and convincing evidence." "Clear and convincing evidence" is the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" must be viewed objectively from the standpoint of BP, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and, BP must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of the plaintiffs.

Compensatory Damages

If you find that BP is liable to the plaintiffs, then you must determine an amount that is fair compensation for all of the plaintiffs' damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiffs whole – that is, to compensate the plaintiffs for the damages the plaintiffs have suffered. Compensatory damages are not limited to expenses that the plaintiffs may have incurred because of the injury. If the plaintiffs prevail, they are entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, that they have suffered because of BP's conduct. The plaintiffs claim damages for past physical pain, mental anguish, loss of earnings, and medical expenses. Of course, the fact that I will give you instructions concerning the issue of damages should not be interpreted in any way as an indication that I believe that any plaintiffs should, or should not, prevail in this case.

You may award compensatory damages only for injuries that the plaintiffs prove were

proximately caused by BP's allegedly wrongful conduct.  The damages that you award must be fair compensation for all of the plaintiffs' damages, no more and no less.  You should not award compensatory damages for speculative injuries, but only those injuries which the plaintiffs have actually suffered or that the plaintiffs are reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty in such calculations lead you to engage in arbitrary guesswork.  On the other hand, the law does not require the plaintiffs to prove the amount of his/her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You may not award damages for any injury or illness that any plaintiff suffered before the date of his/her alleged accident on April 19, 2007.  However, you may award damages for aggravation of an existing physical defect or activation of any such latent condition resulting from physical injury to any plaintiff.  If you find that there was such an aggravation, you must determine, if you can, what portion of a plaintiff's condition resulted from the aggravation and make allowance in your verdict only for that aggravation.

## V.    INTERROGATORIES

You are instructed that you may infer negligence by BP, but are not compelled to do so, if you find:   (a) that the character of the accident is such that it would ordinarily not happen in the absence of negligence; and, (b) that the cause of the accident (*i.e.*, BP's failure to implement preventative techniques and corrective measures in its maintenance program) was under the control of BP at the time the negligence, if any, causing the accident that allegedly occurred. "Control" means that BP must control the timing and implementation of any preventative techniques and corrective measures at its facility.

Answer the following interrogatories:

**Interrogatory No. 1**

Was there an escape, spill, release, or leak of a toxic substance at the BP facility, on the occasion in question, due to the negligence of BP, its agents, employees, or servants?

Answer "Yes" or "No"

Answer:        _Yes_

If you have answered "Yes" to Interrogatory Number 1, then answer Interrogatory Number 2.

**Interrogatory No. 2**

Was such negligence, if you have so found in Interrogatory Number 1, a proximate cause of the injuries, if any, that you found that any plaintiff suffered?

Answer "Yes" or "No" as to each plaintiff, if any, that you have found sustained an injury.

|   |   | Yes | No |
|---|---|-----|----|
| 1. | Gilberto Cantu | _Yes_ | _____ |
| 2. | Rosa Claudio | _Yes_ | _____ |
| 3. | Jose A. Estrada | _Yes_ | _____ |
| 4. | Gregorio Fuentes | _Yes_ | _____ |
| 5. | Eleno Guerra | _Yes_ | _____ |
| 6. | Wayne Jefferson | _Yes_ | _____ |
| 7. | Willy Mays | _Yes_ | _____ |
| 8. | Edwin Munoz | _Yes_ | _____ |
| 9. | Wayne Pearson | _Yes_ | _____ |

10.   Charles Taylor          *yes*          _____

If you have answered "Yes" to Interrogatory Number 2 as to any plaintiff and only in that event, answer the following Interrogatory.

## Interrogatory Number 3

What compensatory damages, if any, do you find as to each plaintiff for whom you answered "yes" in the Interrogatory Number 2?  Answer in dollars and cents, if any.

1.   **Gilberto Cantu**

Mental Anguish/Pain and Suffering  $ 5,000.00

Past Medical Expenses  $ 1,529.30

Lost Income  $ —0—

2.   **Rosa Claudio**

Mental Anguish/Pain and Suffering  $ 5,000.00

Past Medical Expenses  $ 4,193.26

Lost Income  $ 720.00

3.   **Jose A. Estrada**

Mental Anguish/Pain and Suffering  $ 5,000.00

Past Medical Expenses  $ 2,050.93

Lost Income  $ 1,287.00

4.   **Gregorio Fuentes**

Mental Anguish/Pain and Suffering  $ 5,000.00

Past Medical Expenses  $ ~~720~~ 1,091.68 G.F.

Lost Income  $ —0—

–9–

5.    **Eleno Guerra**

    Mental Anguish/Pain and Suffering  $_____ _5,000.00_

    Past Medical Expenses  $_____ _1,915.35_

    Lost Income  $_____ _−0−_

6.    **Wayne Jefferson**

    Mental Anguish/Pain and Suffering  $_____ _5,000.00_

    Past Medical Expenses  $_____ ~~8,927.70~~ ⊘K. 3,612.00 ⊘A

    Lost Income  $_____ _−0−_

7.    **Willy Mays**

    Mental Anguish/Pain and Suffering  $_____ _5,000.00_

    Past Medical Expenses  $_____ _917.79_

    Lost Income  $_____ _−0−_

8.    **Edwin Munoz**

    Mental Anguish/Pain and Suffering  $_____ _10,000.00_

    Past Medical Expenses  $_____ _19,386.21_

    Future Medical Expenses  $_____ _215,000.00_

    Lost Income  $_____ _−0−_

9.    **Wayne Pearson**

    Mental Anguish/Pain and Suffering  $_____ _7,500.00_

    Past Medical Expenses  $_____ _4,755.45_

    Lost Income  $_____ _−0−_

10.   **Charles Taylor**

Mental Anguish/Pain and Suffering   $ _____ 5,000.00

Past Medical Expenses   $ __ 12,297.38

Lost Income   $ _____ -0-

If you have answered Interrogatory Number 3 as to any plaintiff, and only in that event, then answer the following interrogatory.

Punitive Damages

You may also award punitive damages, if the Plaintiff has proven that BP acted with gross negligence, with malice or willfulness or with callous and reckless indifference to the safety or rights of others.  One acts willfully or with reckless indifference to the rights of others when he acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition.  If you determine that BP's conduct was so shocking and offensive as to justify an award of punitive damages, you must exercise your discretion to award those damages.  In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a defendant for shocking conduct, and to deter that defendant and others from engaging in similar conduct in the future. The law does not require you to award punitive damages, however, if you decide to award punitive damages, you must use sound reason in setting the amount of the damages.  The amount of the award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages.

**Interrogatory No. 4**

What damages, if any, do you award as punitive damages, against BP?

| | | |
|---|---|---|
| 1. | Gilberto Cantu | $ 10,000,000  (ten million) |
| 2. | Rosa Claudio | $ 10,000,000 |
| 3. | Jose A. Estrada | $ 10,000,000 |
| 4. | Gregorio Fuentes | $ 10,000,000 |
| 5. | Eleno Guerra | $ 10,000,000 |
| 6. | Wayne Jefferson | $ 10,000,000 |
| 7. | Willy Mays | $ 10,000,000 |
| 8. | Edwin Munoz | $ 10,000,000 |
| 9. | Wayne Pearson | $ 10,000,000 |
| 10. | Charles Taylor | $ 10,000,000 |

<u>JURORS CERTIFICATE</u>

We, the jury, have answered the above and foregoing questions as herein indicated, and herwith return our unanimous verdict into court.



Jury Foreperson