IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON WILSON GARNER, et al | § § | |
| VS. | § § | C.A. NO. G-07-221 |
| BP PRODUCTS NORTH AMERICA, INC. | § § § | JURY TRIAL DEMANDED |

### TRIAL PLAINTIFFS' SUR-REPLY IN SUPPORT OF THEIR MOTION TO SEVER AND FOR ENTRY OF JUDGMENT

Trial Plaintiffs respectfully submit this Sur-reply in Support of their Motion to Sever and for Entry of Judgment and, in support, would show the following.

### OVERVIEW

It is abundantly clear that BP's briefing was prepared by lawyers who were not at the trial. What is troubling is that BP's trial counsel is still listed on pleadings and still appears for BP in court, yet apparently has not explained, or has incorrectly explained, to BP's new lawyers what actually happened at trial. Simply because BP has hired new lawyers does not mean that those lawyers are entitled to a new set of facts.[1]

### REPLY

Much of what BP argues in its Sur-Response is simply a rehash of its previous arguments, which were addressed in Trial Plaintiffs' reply brief (Docket Entry No.290). However, Trial Plaintiffs briefly respond to each point in BP's new response, as follows:

---

[1] BP cites to Plaintiffs' counsel's website; for what reason, one can only guess. Regardless, Plaintiffs' counsel's website sets forth exactly what he argued throughout trial. From the first sentence uttered until the last, no one ever argued that any of the Plaintiffs, except Edwin Munoz, had suffered long-term damage from the exposure. Either this has not been explained to BP's new counsel or they are deploying their client's head-in-the-sand policy. Moreover, to say that someone was lucky enough to escape death or catastrophic injury from a chemical exposure, does not render that exposure "minor."

1. **The source.**  Again, there was overwhelming evidence that the leak originated from the SRU unit, an ongoing source of leaks at the Refinery.  Anyone who sat through the testimony would be familiar with this evidence.

2. **Similar past incidents.**  Again, there was overwhelming evidence of similar events resulting from BP's grossly deficient process safety management—events that had resulted in numerous deaths, not to mention numerous hospital visits by workers.  The Court heard repeated arguments on the issue of similarity of events and allowed admission of evidence that it considered sufficiently similar, and declined to allow the admission of evidence that it found was not sufficiently similar to the leak in question.

3. **Past Actual Harm**.  Again, BP's conduct caused actual and significant harm in the past, and its continuing conduct created an extreme risk of harm, and actual harm, to Trial Plaintiffs and others.

4. ***Res Ipsa***.  Again, as the Court and trial counsel know, and which is also readily apparent from a review of the jury instructions, there was a jury instruction on *res ipsa loquitor*. (Docket Entry No. 284).  Specifically, the instruction read, "You are instructed that you may infer negligence**, but are not compelled to do so**, if you find…" *Id*., at p. 7 (emphasis added). So, it is unclear how this instruction "negates" the jury's finding of gross negligence here, as BP now claims.[2]  It does not.

Further, it is unclear how Trial Plaintiffs counsel's one minute closing argument discussion of his experience in the Marines has anything to do with *res ipsa loquitor*.  Anyone actually at trial would understand that this reference was made as a comparison; however, it is

---

[2] The jury was also instructed on negligence and gross negligence. *Id*., at pp. 5-6, 11.

obvious that BP's new lawyers not only fail to understand what it is like to be tear gassed in the Marines[3], they also fail to understand why the analogy was used.

As was explained at trial, in the Marines, the individual Marine is told what he is going to be exposed to, he is expecting the exposure, and he is told that the exposure will result in no long term damage. This experience was compared and contrasted with the exposure to which the Plaintiffs were subjected—no warning, no information as to what it could be, much more severe symptoms lasting for weeks, and a chance of severe and permanent harm, depending upon the severity and intensity of the exposure--very different exposures indeed.

5. **Ratios.** Again, BP's authority for a 1:1 ratio between actual and punitive damages is *Exxon Shipping Co. v. Baker* ___ U.S. ___, 128 S.Ct. 2605 (2008)--a maritime case, in which the Supreme Court applied maritime law. This is not a maritime case and maritime law does not apply.

Finally, if the Court is inclined to enter a judgment in line with the Texas state caps, it should not reduce the judgment further. "A punitive damages award that comports with a statutory cap provides strong evidence that a defendant's due process rights have not been violated." *Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*, 399 F.3d 52, 65 n. 12 (1st Cir. 2005), quoting *Romano v. U-Haul Int'l*, 233 F.3d 655, 673 (1st Cir. 2001).[4]   "This is so because a court deciding whether a punitive award violates due process must accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue" *Id*. (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 583 (1996)("a reviewing court engaged in

---

[3] Although BP's lawyers would have no clue about what being gassed entails, much less serving in a war in the Marines, rest assured that, if they experienced it, they would likely be less eager to minimize the harm associated with being tear gassed.

[4] *Rodriguez-Torres* and *Romano* were employment discrimination cases, but the First Circuit's reasoning—which followed the Supreme Court's reasoning in *Gore*--applies equally here.

determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue").

A reduction of punitive damages in keeping with the Texas caps would result in a 7:1 punitive to actual damage ratio.[5] This ratio certainly meets the three Supreme Court *Gore* factors: 1) the reprehensibility of the defendant's conduct, 2) the ratio of punitive damages to compensatory damages, and 3) the difference between the award and comparable civil and criminal penalties for similar conduct. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-85 (1996). If the Court is to enforce the caps, it should follow the Supreme Court and "accord substantial deference" to those caps, and not reduce the amount further.

## CONCLUSION

One can only stand in wonder at the decisions made by BP, from its choice of arguments, to its choice of counsel, and the transparent tactics they employ. Obviously, nothing has worked very well for BP, and this trend continues. There remain more than 150 exposure cases, with more exposures occurring at its Texas City Refinery, on a weekly basis. BP's attorneys have changed, but its conduct, and its arguments, remain the same. This Court should enter the verdict that was unanimously rendered in this case by a federal jury, after more than three weeks of trial. The jury rejected BP's arguments, and this Court should do the same.

WHEREFORE, Trial Plaintiffs respectfully request that the Court sever their claims and enter judgment in the form previously submitted or, alternatively, enter a judgment of <u>no less than</u> $2,605,028.77 in actual and punitive damages, plus pre- and post-judgment interest and costs.

---

[5] Trial Plaintiffs agree with BP's calculation as to what punitive damages would be, if capped under Texas State Law. (Docket Entry No. 287, p. 5)

Respectfully submitted,

    */s/ Anthony Buzbee*
ANTHONY G. BUZBEE
SBN: 24001820
S.D. Tex. No. 22679
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel.:   (713) 223-5393
Fax.:   (713) 223-5909
www.txattorneys.com

OF COUNSEL:
**THE BUZBEE LAW FIRM**
SEAN E. O'ROURKE
SBN: 24046547

**Arnold & Itkin, LLP**
Kurt B. Arnold
State Bar No. 24036150
Southern District of Texas No. 36185
5 Houston Center
1401 McKinney Street, Suite 2550
Houston, Texas 77010
Telephone:   (713) 222-3800
Facsimile:   (713) 222-3850
karnold@arnolditkin.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of this document will be served or has been served on all interested parties in accordance with the Federal Rules of Civil Procedure on January 27, 2010. Service on E-Filing Users will be automatically accomplished through the Notice of Electronic Filing; non-Filing Users will be served by certified mail, return receipt requested and/or via facsimile.

| | |
|---|---|
| James B. Galbraith<br>MCLEOD, ALEXANDER, POWEL & APFFEL<br>802 Rosenberg<br>P.O. Box 629<br>Galveston, Texas 77553 | Thomas W. Taylor<br>Kendall M. Gray<br>ANDREWS KURTH LLP<br>600 Travis Street, Suite 4200<br>Houston, Texas 77002 |
| Scott A. Brister<br>ANDREWS KURTH LLP<br>111 Congress Ave., Suite 1700<br>Austin, Texas 78701 | Kurt B. Arnold<br>ARNOLD & ITKIN LLP<br>5 Houston Center<br>1401 McKinney Street, Suite 2550<br>Houston, TX 77010 |

                                              */s/ Anthony G. Buzbee*
                                             ANTHONY G. BUZBEE