UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON WILSON GARNER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. G-07-221 |
| | § | |
| BP AMOCO CHEMICAL COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Before the Court are the plaintiffs', Gilbert Cantu, Rosa Fernandez-Claudio, Jose A. Estrada, Gregorio Fuentes, Eleno Guerra, Wayne Jefferson, Willy Mays, Edwin Munoz, Wayne Pearson, and Charles Taylor, motion for severance and for entry of judgment [Inst. No. 285] and the defendant, BP Products North America, Inc., opposition to the plaintiffs' motion [Inst. No. 287]. The plaintiffs filed a reply brief [Inst. No. 290], the defendant filed a sur-response [Inst. No. 293] and the plaintiff a sur-reply [Inst. No. 294]. The Court has examined the pleadings, reviewed the testimonial evidence, examined the exhibits and considered the arguments of counsel and determines that the plaintiffs' motion for severance and entry of judgment should be granted in part and denied in part.

**II.    HISTORICAL AND PROCEDURAL BACKGROUND**

On or about June 8, 2007, the plaintiffs and over 100 other individuals filed suit against the defendant asserting that the defendant released an unidentified toxic substance into the atmosphere at its refinery causing personal injuries to workers. Scores of workers were transported to local hospital(s) where they were examined, treated and released. At the time, the

plaintiffs were employees of various sub-contractors and were assigned by the general contractor, the Fluor Corporation, to various duties pursuant to the contract between the defendant and Fluor Corporation. The plaintiffs allege that on or about March 19, April 10, April 16 and April 19, 2007, the defendant released an unidentified toxic substance into the air that caused injuries to them.

In response to the plaintiffs' claims and complaint, the defendant asserted that there is no evidence of a toxic leak and suggested, at the time of the occurrence, that the incident may have been a hoax triggered by disgruntled workers. The defendant never identified the substance nor the source of the released, but set out instead to establish that the substance that the plaintiffs were exposed to, if anything, came from off-site, the possibilities included the ship channel, railroad tank cars and the Valero refinery, all located to the south or southwest of the defendant's refinery. Because the substance was unidentified at the time, the hospital(s) and physicians were loath to treat the plaintiffs. Hence, the sum of each plaintiff's treatment, with one exception, was a physical examination and/or decontamination and release.

### III. JURY TRIAL – VERDICT

On or about November 6, 2009, the Court entered an Order designating ten (10) plaintiffs as the first trial group. On December 1, 2009, a jury was selected and trial commenced. A verdict was reached by the jury on December 18, finding that, due to the negligence of the defendant, a toxic substance had been released at the defendant refinery, that the release was due to the negligence of the defendant and that such negligence was a proximate cause of the plaintiffs' injuries. The jury then answered the interrogatory on damages as to each plaintiff as follows:

**Interrogatory Number 3**

What compensatory damages, if any, do you find as to each plaintiff for whom you answered "yes" in the Interrogatory Number 2? Answer in dollars and cents, if any.

1. **Gilberto Cantu**
   Mental Anguish/Pain and Suffering   $   5,000.00
   Past Medical Expenses                $   1,529.30
   Lost Income                          $         0

2. **Rosa Claudio**
   Mental Anguish/Pain and Suffering   $   5,000.00
   Past Medical Expenses                $   4,193.26
   Lost Income                          $     720.00

3. **Jose A. Estrada**
   Mental Anguish/Pain and Suffering   $   5,000.00
   Past Medical Expenses                $   2,050.93
   Lost Income                          $   1,287.00

4. **Gregorio Fuentes**
   Mental Anguish/Pain and Suffering   $   5,000.00
   Past Medical Expenses                $   1,091.68
   Lost Income                          $         0

5. **Eleno Guerra**
   Mental Anguish/Pain and Suffering   $   5,000.00
   Past Medical Expenses                $   1,915.35
   Lost Income                          $         0

6. **Wayne Jefferson**
   Mental Anguish/Pain and Suffering   $   5,000.00
   Past Medical Expenses                $   3,612.00
   Lost Income                          $         0

7. **Willy Mays**
   Mental Anguish/Pain and Suffering   $   5,000.00
   Past Medical Expenses                $     917.79
   Lost Income                          $         0

8. **Edwin Munoz**
   Mental Anguish/Pain and Suffering   $  10,000.00
   Past Medical Expenses                $  19,386.21
   Future Medical Expenses              $ 215,000.00
   Lost Income                          $         0

    9.    **Wayne Pearson**
         Mental Anguish/Pain and Suffering    $    7,500.00
         Past Medical Expenses    $    4,755.45
         Lost Income    $    0

    10.    **Charles Taylor**
         Mental Anguish/Pain and Suffering    $    5,000.00
         Past Medical Expenses    $    12,297.38
         Lost Income    $    0

The jury went on to find that the conduct of the defendant was such that punitive damages should be awarded. It awarded punitive damages of $10 million to each plaintiff. The plaintiffs' request that based on the verdict, their claims be severed from the remaining plaintiffs untried claims and that a final judgment be entered pursuant to Fed. R. Civ. P., Rule 58(a)(1). For the reasons set out hereafter, the Court enters judgment in behalf of the plaintiffs pursuant to Fed. R. Civ. P., Rule 49(b) and 50(b)(1).

### IV.    CONTENTIONS OF THE PARTIES

In their suit, the plaintiffs contended that the release of a toxic substance was caused by the negligence of the defendant in that the defendant: (a) caused or permitted the release of a toxic substance at its refinery; (b) failed to maintain a safe work place; (c) failed to have a reliable system at the plant to prevent releases, such as the one that the plaintiffs complain about; (d) failed to perform its daily operations in a safe and prudent manner; (e) failed to exercise reasonable and prudent care in the operations of its facility; (f) failed to implement, follow and enforce proper operations procedures; (g) failed to implement, follow and enforce property safety procedures; and, (h) failed to implement, follow and enforce proper hazard analysis.

The plaintiffs seek individual judgments in their respective behalves based on the jury verdict. In this regard, the plaintiffs argue that they sought and proved negligence and gross

negligence on the part of the defendant and, therefore, are entitled to the jury awards on both. The plaintiffs argue that the jury's finding of gross negligence was based on the "hundreds of leaks, spills, releases and odor events that occurred at [the defendant's] refinery in the five years preceding the "April 19th event."

The defendant argues that the plaintiffs are not entitled to an award of punitive damages based on the facts as presented. Alternatively, if an award is to be made, it cannot exceed the statutory limits established by Texas statute. *See* Tex. Civ. Proc. & Rem. Code Ann. § 41.008(b). In addressing its claim that the plaintiffs are not entitled to punitive damages, the defendant contends that: (a) the plaintiffs failed to prove gross negligence; (b) the plaintiffs failed to prove that the defendants' Sulphur Recovery Unit ("SRU") actually released the toxic substance that they claimed to have experienced; (c) it had no actual subjective awareness of and did not act with conscious indifference to the risk to the plaintiffs; (d) the doctrine of *res ipsa loquitur* does not supply the necessary state of mind to establish gross negligence on the part of the defendant; (e) the defendant's conduct or lack thereof, as it relates to general maintenance, cannot establish gross negligence; (f) the punitive damage awards are constitutionally excessive and therefore, violates the "due process" clause of the Fourteenth Amendment; and, (g) any award for punitive damages should not be more than the compensatory damage award.

In counter arguments, the plaintiffs asserts that: (a) the maintenance and investigative practices of the defendant prove gross negligence; (b) the Texas statutory cap on punitive damages does not apply; (c) the punitive damage award does not violate the "due process" clause of the Fourteenth Amendment to the federal Constitution; (d) the ratio of punitive damages to compensatory damages is appropriate; and (e) because the punitive damage awards are

comparable to the civil or criminal penalties that could be imposed by a governmental authority for comparable conduct, the awards should stand.

## V.     STANDARD OF REVIEW

State law provided the basis for the plaintiffs' suit and, therefore, provides the bases upon which punitive damage factors are to be determined. *See Quest Med. Inc., v. Apprill*, 90 F.3d 1080, 1090 (5th Cir. 1996) (citing *Browning-Ferris Indus. of Vt., Inc. vs. Kelco Disposal, Inc.,* 492 U.S. 257, 278 (1989). Chapter 41 of the Texas Civil Practices and Remedies Code defines exemplary damages as damages to be awarded as a penalty or by way of punishment, but not for compensatory purposes. *See* TEX. PRAC. & REM. CODE ANN. § 41.001(5). Hence, punitive damages may be awarded where the evidence supports a finding that the actor has committed gross negligence. *Id.* at §§ 41.002(a) and 41.003(a).

In determining whether an actor's act or omission constituted "gross negligence," the evidence must be: (a) viewed objectively from the standpoint of the actor at the time of the occurrence and involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; <u>and</u>, (b) of which the actor has actual, subjective awareness of the risk involved, but nevertheless, proceeds with conscious indifference to the rights, safety, or welfare of others. *Id.* at § 41.001(11).

Proof of gross negligence must be established by clear and convincing evidence as opposed to simple negligence which is established by a preponderance of the evidence. *See Dunbar Med. Sys. Inc. v. Gammax, Inc.,* 216 F.3d 441, 455 (5th Cir. 2000). In other words, in determining gross negligence it is the state of mind of the actor that is under review. The evidence must establish that the actor knew about an extreme risk and by his conduct

demonstrated that he did not care. *See Diamond Shamrock Ref. Co. v. Hall*, 168 S.W. 3d 164, 173 (Tex. 2005).

**VI. ANALYSIS**

In arguing against severance and entry of judgment, the defendant presents alternative positions. First, the defendant argues that there is no clear and convincing evidence that supports a finding of gross negligence. In this regard, the defendant points to the strictures of § 41.001(11) and cites to *Smith v. O'Donnell*, 288 S.W.2d 417, 423-24 (Tex. 2009). Alternatively, the defendant asserts that the Texas statutory limits on a punitive damage award must be applied, with one exception, Edwin Munoz. However, the defendant argues that even the maximum state statutory award is constitutionally excessive. Finally, in a volley of contentions, the defendant asserts that gross negligence cannot be based on an unknown source, dissimilar events, or *res ipsa loquitor*. The Court will address the defendant's positions as necessary but will first address the propriety of the evidence that supports a finding of simple negligence on the part of the defendant.

    *A)    Lack of Negligence – Unknown Source Contention*

The defendant first argues that the plaintiffs failed to prove the source of the release of the toxic substance, the basis for a finding of negligence. The defendant points to the Court's comment, that the odor event resulted from the SRU, an unidentified source within the defendant's refinery, a source outside the defendant's refinery, or was a hoax perpetuated by unknown parties. The evidence before the Court and jury excludes the latter two; a source outside the refinery and a hoax perpetrated by unknown parties.

The defendant also challenges the legal sufficiency of the evidence arguing that it does not would permit the jury to reach the verdict under review. In this regard, the Court must

review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable fact-finder while disregarding any contrary evidence unless a reasonable fact-finder could not. *See Stevenson v. E. I. Dupont DeNemours*, 327 F.3d 400, 405 (5th Cir. 2003); *see also Rentech Steel, LLC v. Teel*, 299 S.W.3d 155, 159 (Tex. App—Eastland, 2009) (internal citations omitted). Hence, in order for the Court to set aside the jury's verdict, there must be a complete absence of a vital fact, or less than a mere scintilla of evidence supporting the vital fact, or the evidence must conclusively establishes the opposite of a vital fact. *Id.* at 159-60.

The evidence establishes that a toxic substance was released and that it had an adverse impact on the plaintiffs. Both the decontamination exercises and the observations of the treating physicians would lead a reasonable fact finder to conclude that the event was not the result of a hoax. The jury heard the testimony of scores of witnesses, including the defendant's officials. None asserted, during trial that the event was a hoax. And, there was no evidence presented by the defendant that contradicted the plaintiffs' assertions of injuries that compelled the jury to disbelieve the plaintiffs' claim. Therefore, the Court is of the opinion that the evidence before the jury was such that a reasonable jury could find that the plaintiffs were exposed to a toxic substance. *See Vogler v. Blackmore,* 352 F.3d 1050, 154-55 (5th Cir. 2003).

As well, there is no evidence that the odor event was the work or fault of an unidentified source outside the defendant's refinery. On the contrary, when the evidence is viewed in the light most favorable to the verdict, the evidence supports the jury's finding that the source was the defendant's refinery. During the presentation of evidence, the defendant presented testimony that there were three (3) possible sources, outside of the defendant's refinery, from which the toxic odor could have migrated. The defendant proffered that there was a Valero refinery

southwest of the BP refinery. And, since the wind was blowing out of the southwest, it was a likely source. They also posited that railroad tank cars, containing sulfur, stationed to the east, or that general direction, could have been the source. And third, because vessels in the ship channel discharge toxic waste from time to time into the ship channel, the ship channel was a possible source.

While the defendant made proffers concerning wind direction and arguments that any one of these venues could have been the source of the toxic odor, the evidence failed to support either of the three sources. Admittedly, there was no evidence of upsets from these three venues. Moreover, TCEQ did not register any release by either of these venues. Nor were there complaints from the community that a release had occurred. Any release would have traveled through the nearby community. Except for the direction of the wind at 9:00 p.m., there was no evidence presented by the defendant that either of the three possible venues could have been a source of release of a toxic substance. While the defendant expended a substantial sum of money investigating these three venues, it too was left to conclude that neither was the source. And, except for wind direction at 9:00 p.m., there was no evidence that should have raised a suspicion. The jury disbelieved the defendant and, therefore rejected its argument, since there was no evidence that an unidentified source, outside the defendant's refinery, was at fault.

The evidence shows that the jury had a good and valid reason to reject the defendant's hypothesis. First, and foremost is the fact that at the time that the plaintiffs first detected the toxic odor, the wind was blowing from a northerly direction. This fact is confirmed by at least one of the workers and the defendant's own internal wind registers. At the relevant time of the

wind readings, the defendant's SRU was operating to the north of the workers' work site.[1] Strikingly, there is no evidence of an off-site source to the north of the defendant's SRU or the refinery that could have been the source of the toxic odor. Hence, a reasonable jury could find that the source of the plaintiffs' injuries was either the defendant's SRU or another source within the defendant's refinery. *See Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex. 1974). Without doubt the wind shifted from a northerly direction to a southeasterly direction and then a southernly direction during the course of an hour, for 8 p.m. to 9 p.m. This fact is undisputed and does not disturb the jury's verdict. Therefore, the Court is of the opinion and holds that there is sufficient evidence upon which a reasonable jury could conclude, by a preponderance of the evidence, that the defendant was the source of the toxic odor and that it was negligent on April 19, 2007, in causing or permitting a leak, spill, escape or release of an unidentified toxic substance at its refinery that was also a proximate cause of the plaintiffs' injuries.

      B.      *Dissimilar Events – No Gross Negligence Contention*

The defendant asserts that a verdict for gross negligence cannot rest on evidence of various or dissimilar events. In this regard, the defendant refers to the plaintiffs' evidence and argument that the April 19, event was simply in a long string of spills or releases that resulted in workers being exposed to toxic substances. The defendant argues that the plaintiffs must prove that the April 19, release was of the same type, nature and/or from the same location as earlier spills or releases in order to establish the "actual, subjective awareness of and conscious indifference to [extreme] risk" required to prove gross negligence. *See* § 41.001(11); *see also Quest Int'l Commc'ns, Inc. v. AT&T Corp.*, 167 S.W. 3rd 324, 326 (Tex. 2005); *Dunbar Med. Sys. Inc. v. Gammex, Inc.,* 216 F.3d 441, 455 (5th Cir. 2000).

---

[1] At the beginning and throughout the trial, the defendant argued that the plaintiffs' evidence failed to show that the source of the toxic odor, even if in its refinery, was under its control. The evidence is undisputed that the SRU was under the control of the defendant on April 19.

The plaintiffs' claims against the defendant charge that the defendant failed to put in place proper safety and operations procedures so as to warn workers when a spill or release might or was about to occur. As well, the plaintiffs point to the defendant's failed maintenance program, that the defendant admits is several years in arrears, as the cause of worker exposure to toxic hazards beyond those ordinarily expected in a refinery. To support their arguments, the plaintiffs offered evidence that less than 24 hours earlier, a release occurred in the same general work area, and that the release caused five (5) workers to become ill, two of whom were medically treated. The plaintiffs contend that this evidence supports a finding of gross negligence because the defendant did not investigate the source or cause of this earlier event. Hence, the plaintiffs argue conscience indifference.

The plaintiffs also point out that a week earlier, on or about April 10, a release occurred that also resulted in injuries. Finally, the plaintiffs proffer that the evidence shows that during the preceding five (5) years, the defendant's facility had over 500 recorded leaks, spills and/or releases other than permitted or scheduled releases. This evidence, the plaintiffs argue, supports their claim of subjective awareness and callousness on the defendant's part.

A jury could conclude that releases, spills or leaks, on average, every third or fourth day means that the defendant knew of a possible peril that its workers were exposed to and that it was, nevertheless, willing to allow them suffer the risk and inconvenience. Moreover, they could conclude that a decision to repeatedly expose workers to such serious risk of harm could mean that the defendant is indifferent to the welfare and health of its workers. Nevertheless, even these findings by a jury are insufficient to establish gross negligence.

The defendant correctly asserts that in order to recover exemplary damages the plaintiffs must establish gross negligence. The statute requires that the evidence pass both an objective

and subjective test. *Id*. § 41.001(11)(A)(B). The objective test requires a showing of an extreme risk of harm – "one that involves both high probability and high potential severity" of an occurrence. (citation omitted.) Here, the evidence fails to establish a legal connection between the event(s) and a known extreme risk. The nature of refinery work is such that workers are subject to a variety of toxic odors at all times. Both the defendant, the employees and contractors are fully aware of the potential hazards that exists in a refinery. As well, all workers are aware of the potential severity that a release might cause were it to occur. A disconnect exists here, however, because while the history of the defendant's refinery shows a high probability that a worker will be frequently exposed to a toxic substance, the evidence does not support the high potential severity side of the test. Nor does the evidence show a high probability of same source. In fact, the abundance of evidence shows that even though there have been hundreds of releases or spills, injuries are not always associated with each event and there is no showing of source.

Also missing from the equation is the element of specific intent. The statute requires that the plaintiff establish a "specific intent" by clear and convincing evidence. *Id.* at 41.001(7). Specific intent requires more than a showing that a defendant had an awareness of the possibility of a spill or release. *See Diamond Shamrock Refining Co. v. Hall,* 168 S.W.3d 164, 171 (Tex. 2005). It requires a showing that a defendant ignored the obvious or known risk and took no precautions that would minimize or arrest the harm anticipated. *Id.* at 171-72. The evidence shows that the defendant implemented safety precautions requiring each worker to wear a monitor to detect the most deadly toxic chemicals present at the refinery. And, there is evidence that on the occasion, monitors were installed and operational on the ground as well as on the towers in the refinery. Therefore, the Court concludes, as a matter of law, that gross negligence

was not proved by clear and convincing evidence and that the jury's exemplary damage award must be set aside.

    It is so Ordered.

    SIGNED at Houston, Texas this 16th day of March, 2010.

                                                        _____
                                                        Kenneth M. Hoyt
                                                        United States District Judge