1        UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF TEXAS
2             HOUSTON DIVISION

3

4   AARON WILSON GARNER, ET AL     *     G-07-CV-221
                                   *     Houston, Texas
5   VS.                            *
                                   *     January 20, 2010
6   BP PRODUCTS NORTH AMERICA,     *
    INC.,
7

8                  STATUS CONFERENCE

9

         BEFORE THE HONORABLE KENNETH M. HOYT
10            UNITED STATES DISTRICT JUDGE

11

**APPEARANCES:**
12

**FOR PLAINTIFFS:**
13  Anthony Buzzbee
    THE BUZBEE LAW FIRM
14  600 Travis, Suite 6850
    Houston, Texas 77002
15

16

17  **FOR DEFENDANT:**
    Scott Brister, Thomas W. Taylor Kendall M. Gray and John
18  Shely
    **ANDREWS & KURTH, LLP**
19  600 Travis, Suite 4200
    Houston, Texas 77002
20

21  James B. Galbraith
    **McLEOD, ALEXANDER, POWEL & APFFEL, PC**
22  802 Rosenberg
    Galveston, Texas 77553
23

24

25

1   Court Reporter:
    Johnny C. Sanchez, RPR, RMR, CRR
2   515 Rusk, #8016
    Houston, Texas 77002
3   713.250.5581

4
    Proceedings recorded by mechanical stenography.   Transcript
5   produced by computer-assisted transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    THE COURT:  All right.  This is Cause

2 Number 2007-221, Aaron Wilson Garner versus BP Products

3 North America, Incorporated.

4                    Let me just acknowledge for the record

08:32:14AM 5 that I have before me and have reviewed the plaintiffs'

6 motion for severance and for entry of judgment.  The

7 defendant's response in opposition to the plaintiffs'

8 motion for severance and for entry of judgment, as well as

9 memorandum prepared and presented.  And then the

08:32:35AM 10 plaintiffs' reply brief and supporting data or documents

11 that were attached to that.

12                    I have a couple of questions, and then

13 I'll tell you how I think we need to proceed, and then you

14 can argue with me rather than with each other.

08:32:55AM 15                    When Judge Gilmore had this case and you

16 all discussed with her how you were going to proceed, did

17 you agree upon -- when I say "agree," I don't necessarily

18 mean in writing -- but did you have a kind of general

19 agreement as to how you would handle any remaining claims?

08:33:16AM 20 For example, did you agree that you would -- and I think

21 one of the statements I made when we discussed this was

22 that I think we should not try liability over and over

23 again simply to create confusion in the record.  We should

24 either try it once and win or lose on that basis, appeal it

08:33:36AM 25 on that basis; or correct it and retry it on that basis.

1  But not try segments or groups of plaintiffs and end up

2  with inconsistent results that would not necessarily

3  resolve the case, and this would then turn out to be more

4  than a lifetime experience for all of us, which I think

08:33:56AM  5  would be totally -- total injustice not only to the

6  plaintiffs and the defendants, but also to the

7  administration of justice.

8           So did you-all agree that you would have a

9  single finding of liability and then figure out what to do

08:34:12AM  10  with the balance, or was there anything in writing?

11           We'll start with you.

12           MR. BUZBEE:  Thank you, Your Honor.  First off,

13  thanks for moving this.  I was in trial yesterday in

14  Cameron County.  I appreciate you accommodating me.  No, we

08:34:23AM  15  did not.  I think we both and we never -- I don't think I

16  ever talked to Jim about any of this -- but we kind of were

17  looking at these as kind of 10 Bellwethers, which really

18  aren't binding on the rest of the group.  I'd love it to be

19  binding obviously, in light of the outcome, but with all

08:34:38AM  20  candor, we had no agreement other than choosing 10, trying

21  them, so we could get an idea of what the settlement value

22  of the cases were.  And I don't -- and we had this

23  discussion even before we tried the case.  I don't think

24  that there's any binding effect on any of the other

08:34:55AM  25  plaintiff's.  I wish there was, but I think legally there's

1 not.

2                    So I thought the way we were going to

3 proceed was let's see how these first 10 go, and then let's

4 huddle up and see if we can resolve the remaining 150 or

08:35:08AM 5 so.  Although for the first time I heard Jim say, I think

6 in a hearing up in Houston, that we may want to do this one

7 more time.  So -- which I'm happy to do.  I think it's a

8 disservice to the court system and to these plaintiff's.

9 But to answer your question directly, no.  We had no

08:35:24AM 10 agreement.

11                    THE COURT:  Yes.

12                    MR. GALBRAITH:  That's correct.  There is --

13 there was no agreement.  We talked about it at the time

14 when Judge Gilmore said, "I want you to get --" you may

08:35:35AM 15 recall, "I want you to get 20 plaintiffs ready for trial.

16 Discovery should be basically restricted to those 20, not

17 to others."

18                    THE COURT:  Right.

19                    MR. GALBRAITH:  And she made it clear that if

08:35:46AM 20 we needed some for fact witness purposes, we could take

21 some discovery regarding others and some basic discovery

22 regarding others, but we were to focus on a group that was

23 picked, chosen by the plaintiffs with no input from anybody

24 else from the Court, from random or from defendants.  And

08:36:05AM 25 so, it was talked about how these would be the, quote, most

1 plaintiffs favorable Bellwether group.  And that could

2 present some problems for offensive collateral estoppel in

3 the future.

4              MR. BUZBEE:  Your Honor --

08:36:19AM 5              MR. GALBRAITH:  In other words, there was no

6 agreement.

7              MR. BUZBEE:  -- there's no agreement.  For

8 instance, like in New Orleans, we have probably 80,000 of

9 these FEMA cases.  We -- we've tried two now, and we're

08:36:29AM 10 going to try probably four more, with the idea again being

11 once we get an idea of what these things are worth, let's

12 huddle up and try to resolve it.  So I think these first 10

13 are just a good indication of --

14              THE COURT:  Well, the idea of what something is

08:36:43AM 15 worth has to have a basis, and the basis generally is

16 assumption as to liability, and then we talk about what

17 something is worth.

18              MR. BUZBEE:  I think you're right.

19              THE COURT:  But if you can't determine

08:36:52AM 20 liability, or if we play with the liability issue and end

21 up, for example, with 10 different -- well, we couldn't end

22 with 10 different verdicts.  I guess we could end up with

23 at least three.

24              MR. BUZBEE:  There's a hundred --

08:37:04AM 25              THE COURT:  Finding for the plaintiff's,

1 findings for the defendants and hung jury.  That's about

2 the size of it.  But if we end up with that kind of a

3 combination if we were to try these in series of 10 or 15,

4 probably take us about another year or two to get these

08:37:17AM 5 done within the context of the -- my dockets.

6                       We would still not have a declaration on

7 any liability issue.  And, of course -- and I said not a

8 declaration, I mean we would not have a binding what

9 defense might consider to be binding liability issue.  And

08:37:38AM 10 without binding liability issue, we'd never get to an

11 indication of what anything might be worth, irrespective as

12 to how reasonable the numbers might be.

13                       And I'm saying that with an understanding

14 that whatever the numbers are, certainly argument now is

08:37:57AM 15 and several, at least in one respect is totally

16 unreasonable, but assuming that you had reasonable

17 determinations that the parties could agree on within

18 reason, you would not necessarily agree to resolve any

19 balance because, it seems to me, you would want to resolve

08:38:14AM 20 through the Circuit Courts looking -- looking at you,

21 Ken -- you don't want to resolve through the Circuits

22 probably the issue of liability.

23                       And so, we're talking about something that

24 could take five to eight years to work our way through

08:38:25AM 25 that, depending on how the Fifth Circuit works.  But

1  assuming they were to remand on any issue, we would in a

2  sense be stuck with any other claims.

3           So we would either have to try them all so

4  that the Circuit can look at liability one time and make

08:38:43AM 5  that resolution, and that would be, let's say 150 or so

6  plaintiff's, more or less.  And now we know they win or

7  lose, meaning liability, we'd probably still have to look

8  at resolution as relates to what the cases are worth after

9  that.  So I don't know of any way we can do this.

08:39:03AM 10          MR. BUZBEE:  I haven't looked at the collateral

11  estoppel issue, but obviously res judicata is not in play

12  and maybe we should have, before we tried the case, reached

13  some agreement that this was binding, at least liability

14  wise, on the remaining.  But we didn't do that.  So I

08:39:18AM 15  think, if nothing else, we've got to try at least another

16  10.  And, now, if you as the Judge want to say, "You know

17  what?  All these are in one case.  We're going to try

18  liability."  I think you have the discretion to do that.

19  "We're just going to try the liability case."

08:39:35AM 20          THE COURT:  I don't know how much discretion I

21  have from the Circuit's perspective on this issue.

22          MR. BUZBEE:  Well, if you sever these, you've

23  got a separate case.

24          THE COURT:  Well, severance might be for

08:39:45AM 25  purposes of trying the others.  It would simply have to be

1  for purposes of determining liability for the Circuit

2  Court.  I would not want to spend my time or your time

3  trying these cases without knowing what the end of the line

4  looks like.  So here's seems to me what we've got.

08:40:03AM  5       MR. GALBRAITH:  A due order of pleadings, so to

6  speak.

7       THE COURT:  Say again.

8       MR. GALBRAITH:  A due order of pleadings, so to

9  speak.  In other words, there are certain things that would

08:40:15AM 10  have to happen first before we get ahead of ourselves.  In

11  other words, when there's no collateral -- I mean no res

12  judicata.

13       THE COURT:  Right.  There is one of two ways it

14  would seem to me to be handled.  Somehow the Court could

08:40:26AM 15  make the finding and determination that the relationship

16  between the plaintiff's is such that there is res judicata

17  on the issue of liability for purposes of setting in place

18  the foundation on which we would then have the obligation,

19  responsibility to try the damage issues as it relates to

08:40:43AM 20  each of the plaintiff's.  So we would then try the damage

21  issues and come to some kind of resolution as it relates to

22  the case in its entirety.  And, of course, somewhere along

23  the way I've got to raise the issues that you've raised

24  here whether I do it now or later, in terms of the -- I

08:41:00AM 25  think the main issue, at least in part, or the biggest of

 1  these issues, has to do with punitive damage issues,

 2  whether or not it should exist at all.  And if so, what is

 3  the -- what is a reasonable basis for punitive damages.

 4                    That would certainly posture the case in a

08:41:19AM  5  way that the entirety of the case goes up to the Circuit

 6  Court.  And, you know, I hate to think that they would pick

 7  at it and just say, "Well, we don't like the way it came.

 8  We're going to reverse it because we want to try every one

 9  of these things individually," which we would know sooner

08:41:36AM 10  or later for sure.  We'd certainly know that sooner.

11                    But if we did not have all of that done,

12  we could certainly then determine at that point what the

13  liability would be -- I mean, what the damages would be by

14  some kind of resolution between you-all, even in the face

08:41:57AM 15  of the possibility that a second jury two years from now

16  might -- or whatever time -- might determine what liability

17  is.  And certainly at that point we'd have to go back and

18  then try the liability issue as it relates to each of these

19  individuals, it would seem to me that at the very least,

08:42:20AM 20  though, the damage issues would have been resolved one way

21  or the other, either by jury verdict or by rule of law,

22  that is what we agree to be reasonable or by settlement,

23  that is, "We agree that this is what we will pay if there

24  is a jury that would find for each of the plaintiff's as it

08:42:37AM 25  relates to liability."  I'm concerned that I don't want

1 both of those issues tried over and over again.  That's

2 what I'm convinced of, that to do both is to lengthen this

3 case in ways, or cases in ways that could be but never

4 done, unless you-all just go case-by-case and you kind of

08:43:01AM 5 beat each other up until some day you just say, "Hey, I'm

6 tired of this.  Let's get it over with," then you settle

7 it.  That might be the answer too.  Go ahead.

8               MR. GALBRAITH:  Two things, Your Honor.  I

9 apologize, Your Honor, for not introducing co-counsel

08:43:14AM 10 joining me on this matter for appeal.  Scott Brister of

11 Andrews & Kurth.

12               THE COURT:  I saw his name on the pleadings.  I

13 knew I was in trouble.  Go ahead.

14               MR. GALBRAITH:  Kendall Gray, John Shely and

08:43:27AM 15 Tom Taylor.

16               Second of all, Your Honor, we know there's

17 a lot of law on collateral estoppel and res judicata

18 perhaps does not reply here.  We've done a cursory look at

19 that, but I understand today is a motion for judgment

08:43:42AM 20 hearing on the trial that was had.

21               THE COURT:  Right.

22               MR. GALBRAITH:  And so, we would just request

23 an opportunity, if and when that becomes ripe, to examine

24 that law and present it to the Court because we think it's

08:43:53AM 25 a pretty voluminous precedent.

1              THE COURT:  Okay.

2              MR. BUZBEE:  Your Honor, and to dovetail on

3    that, again, I thought that this was -- I haven't even

4    looked at the remaining so many clients to see what the

08:44:07AM 5    effect of this verdict was and didn't come prepared to

6    discuss that, although I talk off the top of my head, which

7    I'm doing.  But I'm here really to try to get a judgment

8    entered so we can -- because I think all their motions to

9    set aside an all that silliness is probably premature.

08:44:17AM 10   They're putting the cart before -- you've got to have a

11   judgment before you can have your post-trial motions.

12              THE COURT:  Right.

13              MR. BUZBEE:  And we don't have that yet.  And

14   that's why I think the rule said if a judgment is not

08:44:24AM 15   entered, it says timely -- and I'm not saying you didn't

16   enter it timely -- but we wanted to get a judgment entered

17   so we could start all those time limits running.  And then

18   if you did decide to sever and enter a judgment, then at

19   some point we start dealing with the remaining plaintiff's,

08:44:38AM 20   we could have -- we could talk and brief in detail all the

21   effect, if any, of the verdict on the other plaintiff's.

22              MR. BRISTER:  As long as I've tried try cases

23   but I'd say, Your Honor, I think the problem is going to

24   be -- actual damages are not a big -- it's just not that

08:44:53AM 25   much involved.  The jury awarded basically what the cost of

1  going -- return to the emergency room, fights over punitive

2  damages --

3              THE COURT:  Right.

4              MR. BRISTER:  -- or if you just try that from

08:45:03AM 5  liability, the problem is you're not going to be able to do

6  it because plaintiffs' counsel for punitive damages or

7  whether want to go want to go in 500 leads and history of

8  this, that and the other.  And, of course, we're going to

9  want to defend on each one of those.  You're going to end

08:45:17AM 10 up on the punitive damages trying liability again anyway.

11             So I just think it's going to be

12 difficult, other than the actual damages, it's going to be

13 difficult to have a trial just on damages without doing the

14 liability anyway.

08:45:29AM 15            MR. BUZBEE:  And I think we solved that problem

16 because we thought about -- we thought about trying to make

17 a discrete issue on punitives, and I think we all figured

18 out that would be very difficult to do.

19             THE COURT:  All right.  So I think I did enough

08:45:45AM 20 discussion on the several sides of this to -- let me ask

21 Jim.  Why would not you want us to sever this?

22             MR. GALBRAITH:  I'm sorry, Your Honor?

23             THE COURT:  Why would you not want me to go

24 ahead sever and let this go to the Circuit Court now?

08:45:59AM 25            MR. GALBRAITH:  Our response does not take

1 issue with the severance portion of their request.

2          THE COURT:  Okay.  I see.

3          MR. GALBRAITH:  We.

4          THE COURT:  But you -- go ahead.  Your response

08:46:08AM  5 and your concern has to do with punitive damages, I gather.

6          MR. GALBRAITH:  We have preserved, we believe,

7 appeal and we will be preserving appeal post-judgment

8 motions as he had mentioned, timely.  That is our intent.

9 And we -- I'm not going to say we're anxious to appeal

08:46:27AM 10 this, but we're ready and we're intent upon doing so, and

11 we'll do it timely according to the Rules.

12          THE COURT:  All right.  Sounds to me like what

13 I need to do is just go ahead and do what would normally

14 occur in the processes in this proceeding, and that is to

08:46:45AM 15 enter judgment, entertain your motion for the -- on the

16 issue of exemplary damages, make that resolution in a final

17 judgment, and then let the nature take its course, the

18 legal nature take its course.

19               The question then would be:  What is your

08:47:03AM 20 preference as it relates to trials in the interim?  What

21 would you -- one of the problems that I am concerned about

22 is trying the case and the Circuit Court then saying, "We

23 want you to do it a certain way."  And I don't mean that in

24 a bad way, but I mean in the sense of the presentation of

08:47:25AM 25 the case to the jury.  It would seem to me this would all

1  go on hold, in a sense, until the Circuit Court speaks to

2  the liability issue as relates to these plaintiffs because

3  if that model is not going to work, it's just not going to

4  work.

08:47:39AM  5       MR. GALBRAITH:  It's a great concern and one

6  that we have grave concerns about, and it's one of those

7  that we mentioned that there isn't, we think, a lot of law

8  on, and at the proper time we would like an opportunity to

9  present to the Court.  I think it will impact the Court's

08:47:54AM 10  decision.

11       THE COURT:  I'm trying to avoid the paper

12  weight here.  I'm trying to give you a sense of my thought

13  so that I avoid some of the weight of the paper so that I

14  don't have these 10-pound motions dropping on me while I'm

08:48:07AM 15  thinking about this.  So my concern is not only making this

16  available making the -- going forward movement available to

17  both sides, that is, by getting a judgment in place, but

18  also to see if there is some room for agreement, let's say,

19  as it relates to how these remaining plaintiffs  ought to

08:48:28AM 20  be handled, understanding that time is going to be a factor

21  at the some point if the Circuit Court sits here for a year

22  or two.  We could have people who were ill or -- some of us

23  are going to die between now and 2011, '12.  So that's just

24  something that we have -- and I don't mean we in the room

08:48:50AM 25  necessarily.  I mean we in general.

1                 You could certainly have some plaintiffs

2 who would be unable to attend, and the expense, I suppose,

3 of doing depositions could be just horrendous.  I mean, it

4 would just be totally outrageous to do a hundred

08:49:09AM 5 depositions or 120 depositions, for that matter.  And the

6 only issue, it seems to me that you would want to depose on

7 would be not so much on what the plaintiffs "suffered"

8 because I believe that it seems to me that the status of

9 the law, the status of the facts are that we're talking

08:49:34AM 10 about the kind of damages that would be available to a

11 plaintiff based upon diagnostic procedures, as opposed to

12 treatment.

13                 So, I mean, it's not something that's ever

14 going to change unless somebody is suffering from something

08:49:52AM 15 now.  For example, I mean, if you do a CT or whatever back

16 in 2009, that price is going to be there.  If you did three

17 followups to the doctor for $100 a piece, and so your total

18 medical is $2500, that's it.  What's there to argue about?

19 You might say it shouldn't be, but I'm not sure that the

08:50:14AM 20 focus of your case is on whether or not those were

21 reasonable and necessary diagnostic tests, but whether or

22 not you have any liability that would require you to pay

23 the diagnostic test itself.  They pay for those.  And

24 that's where I'm concerned about, that's where I'm

08:50:34AM 25 concerned about as relates to the question of discovery,

1 because the discovery as it relates to liability is in

2 place, unless something new has happened.

3                  It's going to be the same discovery that

4 we've tried.  The diagnostic costs are in place.  Everybody

08:50:53AM 5 can know that.  That's not an issue in dispute, in terms of

6 the amount, I don't think, and perhaps not even the

7 reasonableness of those, those of what doctors charge.  And

8 I'm not sure if -- I'm looking at you, Mr. Busby.  I'm not

9 sure if there is anything else in there that would be kind

08:51:16AM 10 of a wild card where somebody says, "In addition to

11 diagnosis, I spent the next six months in the hospital or

12 the six, you know, getting treatment.  And, therefore, my

13 expenses --" and we have one plaintiff I believe whose

14 expenses were way out there, in terms of and in

08:51:35AM 15 relationship to the other plaintiffs.  I'm just not sure.

16                  So it may be that we're not really --

17 we're not going to lose anything, but it would seem to me

18 that there ought to be some way to preserve that without

19 having to depose those parties and go to that with expense,

08:51:54AM 20 assuming that the Circuit Court disagrees with, let's say,

21 the liability aspect, we would not be spending time trying

22 some of those issues or trying to recover some of those

23 issues.

24                  MR. BUZBEE:  May I be heard on that, Your

08:52:07AM 25 Honor?

1              THE COURT:  Sure.

2              MR. BUZBEE:  I think it's fully within your

3 discretion, if you believe that the liability part of the

4 case has been fully explored -- which obviously I believe

08:52:14AM 5 it was -- you can limit or prevent depositions on that

6 issue.  And with regard -- I mean, I think BP --

7              THE COURT:  What would you be doing discovery

8 on?

9              MR. BUZBEE:  It wouldn't be me.

08:52:27AM 10             THE COURT:  If going forward with the other

11 cases, what would you be doing?

12             MR. BUZBEE:  I wouldn't be doing anything other

13 than defending depositions because I feel quite confident

14 with the history I have with BP, they're at least going to

08:52:39AM 15 want, before the next trial, to depose these plaintiffs who

16 would be in the next trial group.

17              Now, remember that's their discovery, not

18 mine.

19             THE COURT:  Right.

08:52:46AM 20             MR. BUZBEE:  So, what I would suggest, because

21 they're going to want to do that -- and, frankly, I think

22 they have the right to do it -- you could limit that to

23 one hour just so they could explore, "Look, what is your

24 story, and what is your damage?"  And they should be able

08:52:59AM 25 to, if they do it correctly, do that in an hour.  But I

1  think that -- I'm not sure -- I mean, you can do whatever

2  you want, obviously, but I don't think it would be proper

3  to say no depositions.

4              But I think they are -- I don't know why

08:53:11AM  5  I'm being so fair, but I guess when I'm sitting on a a

6  hundred-million dollar verdict I can be a lot fairer.

7              THE COURT:  Being fair or not fair I don't

8  think that's the issue because at some point they would

9  entitled to some discovery,.

08:53:22AM 10              MR. BUZBEE:  Yeah.  They're gonna get.

11              THE COURT:  It's whether or not that discovery

12  is worthwhile --

13              MR. BUZBEE:  Well, I think one hour --

14              THE COURT:  -- in this process.  And the reason

08:53:28AM 15  I say it that way is because what could you discover now

16  that would be of any value to you two years from now that

17  won't be the same value to you two years from now if

18  necessary?

19              MR. BUZBEE:  First of all, I want to say this.

08:53:42AM 20  I mean, I know judicial economy, you may be leaning towards

21  saying, "Look, I'm not going to try another 10 or 20 of

22  these until the Circuit speaks on this issue," but I would

23  say this to that:  These other 150 some-odd plaintiffs

24  deserve their day in court, and I don't think it's fair for

08:54:01AM 25  them to have to sit and wait to determine whether the Fifth

1 Circuit thinks you did something right or wrong, or I did

2 something right or wrong and whatnot.  I don't think that's

3 right.  I think you, as a judge, appointed by the

4 president, you make decisions that until the Fifth Circuit

08:54:19AM 5 overrules --

6          THE COURT:  But they were appointed by the

7 president too.

8          MR. BUZBEE:  True.  True.  My point is --

9          THE COURT:  By a different president, but

08:54:26AM 10 nevertheless.

11          MR. BUZBEE:  Right.  Right.  I understand.  You

12 made decisions that until they're overturned, that is the

13 law of this case.  And, frankly, you may change your mind

14 because you made rulings on evidence based on what was

08:54:40AM 15 before you at the time.  And every case, anybody that tries

16 a lot of cases know every case goes differently.  But the

17 point is these remaining 150 some-odd plaintiffs are

18 entitled to their day in court just like the first 10 were.

19 And I don't think it's proper, and it would be manifestly

08:54:55AM 20 unfair to these plaintiffs to say, "Let's just sit and wait

21 and make sure the first trial was done correctly."

22          I would suggest and urge you on behalf of

23 the remaining plaintiffs for you to, whether you want to

24 try 10, 20 or even 50 -- I don't care -- let's tee up

08:55:09AM 25 another one, because if there's going to be a resolution.

1 There may not ever be one in this case, but if there's

2 going to be one, the only way you're going to get

3 resolution is set trial dates, set deadlines, and let's get

4 going.

08:55:21AM 5            THE COURT:  Well, that's the concern I have,

6 Mr. Buzbee.

7            MR. BRISTER:  Three things, Your Honor:  First

8 of all, we would request the Court to stay the rest of the

9 cases during appeal.  If the Court does not, we'll be

08:55:33AM 10 asking the Circuit Court to do that, and that's because

11 there's no point in doing even the discovery, even the

12 depositions, without knowing, for example:  Is this a

13 punitive damages case or not?  I have little doubt that if

14 we get -- when we resolve the question, if as we believe

08:55:50AM 15 this is not punitive damages cases, we're not going to have

16 to try any of these, the amount of money involved in the

17 plaintiffs actual damages is less than they're going to

18 have to pay me and Mr. Gailbraith and everybody else to

19 come down and try these.  If we can get a dispositive

08:56:06AM 20 ruling on that, if we're right or wrong on that.  But if

21 the Circuit Court says we're right on that, "These are not

22 punitive cases," which was what I was hoping to argue

23 today, then we're wasting our time on everything else.

24            THE COURT:  Let me just speak to that -- and,

08:56:19AM 25 Mr. Buzbee, to not step on or rain on your parade -- I'm

1  seriously concerned of punitive damages.  In fact, I don't

2  believe the punitive damages as they exist can stand.

3  That's an issue I think I'm going to have to resolve

4  against the current plaintiffs.  And it concerns me for

08:56:36AM  5  several reasons:  One, because now we don't have a punitive

6  damage issue, punitive damage award in place.  If I were to

7  rule the way that defendants want me to rule, it would mean

8  that we would not be trying, we could not try the remaining

9  plaintiffs on that punitive damage issue because they're

08:56:55AM 10  arguing that punitive damages ought to be -- well, whether

11  statutorily or not, they're way beyond what would be

12  reasonable under these circumstances, which is not you -- I

13  share that view -- the problem is I don't have a formula

14  for figuring out what that -- what a reasonable punitive

08:57:15AM 15  damage award would be -- at least I don't have a look at

16  that -- in light of the request to enter a judgment.  And

17  so, I've either got to come up with some determination of

18  my own.  And if I'm to award, say, an award of punitive

19  damages should be made, or I'm going to have to say, "No,

08:57:40AM 20  it should not," and let the Circuit Court make that

21  determination and simply award actual damages as to -- I

22  say "actual," whatever those damages are -- short of

23  punitive damages so that that is an issue for the Circuit

24  Court, which then puts a common block to some extent in the

08:57:57AM 25  way of the question of, well, it may not.  If I determine

1  that it shouldn't at all, then I would be trying them on

2  that basis and might have to retry every one of them.

3  That's one of the concerns.

4           MR. BRISTER:  If I could just -- I'm sensitive

08:58:09AM 5  to everybody entitled a day in court, but this is not a car

6  wreck case.  This is a mass tort case, and mass tort cases

7  get tried differently and the first view are reviewed much

8  more stringently because it's a new and unexplored cause of

9  action, whether it's asbestos -- start of an asbestos or

08:58:26AM 10  toxic suit or whatever else.  And until the rules are laid

11  down, really, we can waste a lot of time and money doing

12  stuff that's going to -- they're going to end up saying is

13  not necessary.  As to the --

14           THE COURT:  Go ahead.

08:58:38AM 15           MR. BRISTER:  As to -- finally, just as to the

16  weight of the paper, the reason we limited our -- we're

17  concerned about.  And the reason we limited what we filed

18  today to punitive damages because most of the rest of it

19  that Your Honor, the other issues were going to raise, we

08:58:53AM 20  will -- we will and give you a lot of paper on that

21  post-judgment.  We were hoping to do punitive damages

22  before judgment because it's more a discrete issue.  And,

23  as I said, these are issues, the cap busters and

24  constitutional limits on punitive damages, these are things

08:59:10AM 25  that haven't been presented, couldn't have been presented

1  until you get an award.  If Your Honor doesn't want to

2  entertain argument on those today --

3              THE COURT:  No, I don't.  I really don't.

4              MR. BRISTER:  Well, I've got -- I request

08:59:20AM  5  permission --

6              THE COURT:  Later.

7              MR. BRISTER:  Well, we got a reply at 6:30, I

8  personally got it about 8:00 on Monday night.  And I've got

9  several things I'd like to point out about that.  It won't

08:59:30AM 10  be long, but we would request permission --

11              THE COURT:  No.  Go ahead and file it.  I'm not

12  going to do this on my lunch break.

13              MR. BRISTER:  I understand.

14              THE COURT:  This is going to take a little bit

08:59:40AM 15  more time than that.

16              MR. BRISTER:  We will keep it short, but there

17  are a couple of points that we need to present.

18              THE COURT:  I think what I'm being told -- and

19  this is not to confess anything -- I think I'm being told I

08:59:53AM 20  really have to do the hard work here, make the decisions

21  and the calls because there is no room for agreement, and

22  then decide at the appropriate time whether or not the

23  case, the other remaining plaintiffs should go forward.

24  That's what I'm hearing.

09:00:05AM 25              MR. BUZBEE:  Your Honor, just that --

1          THE COURT:  And I need to have a clear path,

2 and that's going to have to be the one that I cut myself.

3 Y'all are not going to help me.  Yes, sir?

4          MR. BUZBEE:  And just so you know, a lot of

09:00:16AM 5 evidentiary argument is being made in the case, but we

6 don't have a transcript to make those arguments, other than

7 my three-way memory because I sat through this grueling

8 process.  So, you know, I think the way it's supposed to

9 work, at least it's always worked, is you enter the

09:00:31AM 10 judgment, and then we get the transcript.  If we need more

11 time, then we make our arguments on post-judgment about

12 whether punitives are constitutional and whether they're

13 capped and all of that silliness.  You know, we're not

14 really prepared on this side to do that.  I think they paid

09:00:46AM 15 for daily copy, so they may have the transcript.  I frankly

16 don't have it, other than my alcohol tainted memory.

17 That's all I got.

18          THE COURT:  All right.  Well, I'll do it.

19          MR. BUZBEE:  All right.

09:00:58AM 20          THE COURT:  And then I'll make that -- I'll

21 make that call.  Probably take me maybe 10 days or so to

22 get this done.  I'll go ahead and do it so we can move it

23 along.

24          MR. BRISTER:  We'll get a response to you this

09:01:11AM 25 week.

1          THE COURT:  You need to do it this week.  I'm

2    going to be out.  I hope to have this done before the end

3    of the month.  So that's your time frame.

4          MR. BRISTER:  All right.

09:01:19AM  5          THE COURT:  Anything else, gentlemen?

6          MR. GALBRAITH:  Thank you, Your Honor.

7          MR. BUZBEE:  No, sir.  Thank you, Your Honor.

8          THE COURT:  All right.  Have a good day.

9              **(Recessed at 9:01 a.m.)**

10             **COURT REPORTER'S CERTIFICATE**

11

12    I, Johnny C. Sanchez, certify that the foregoing is a

13    correct transcript from the record of proceedings in the

14    above-entitled matter.

15

16                          /s/ _____
                            Johnny C. Sanchez, CRR, RMR

17

18

19

20

21

22

23

24

25